# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| ALLAN R. SERGEANT | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )     Civil Action No. 8:15--cv-02233-PWG |
| | ) |
| ALFIE G. ACOL, *et al.* | ) |
| | ) |
|     Defendants. | ) |
| | ) |

## PLAINTIFF'S MOTION FOR REASONABLE FEES AND LITIGATION EXPENSES AND MEMORANDUM OF LAW AND POINTS OF AUTHORITIES IN SUPPORT THEREOF

Pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure and Local Rule 109.2, prevailing Plaintiff Allan R. Sergeant respectfully moves this Court to enter an award for Mr. Sergeant against Defendant Alfie G. Acol in the amount of $257,540.00 and non-taxable reasonable litigation expenses in the amount of $5,560.41. Plaintiff directs this Court's attention to his Memorandum of Law and Points of Authority of in Support of this motion.

Dated: April 20, 2017

Respectfully submitted,

| | |
|---|---|
| /s/ Dennis A. Corkery | /s/ Carl Messineo |
| Matthew K. Handley (D.C. Bar No. 18636) | Carl Messineo (D. Md. Bar No. 015013) |
| Dennis A. Corkery (D. Md. Bar No. 19076) | Mara Verheyden-Hilliard (D. Md. Bar No. 015014) |
| WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS | PARTNERSHIP FOR CIVIL JUSTICE FUND |
| 11 Dupont Circle, Suite 400 | 617 Florida Avenue NW |
| Washington, DC 20036 | Washington, DC 20001 |
| Phone: (202) 319-1000 | Phone: (202) 232-1180 |
| Email: dennis_corkery@washlaw.org | Email: cm@justiceonline.org |
| Email: matthew_handley@washlaw.org | Email: mvh@justiceonline.org |
| | |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |

**TABLE OF CONTENTS**

**Introduction**……………………………………………………………………………..…1

**Nature of the Case**…………………………………………………………………………2

**Claims on Which Plaintiff Prevailed**…………………………………………………...4

**Claims on Which Plaintiff Did Not Prevail**…………………………………………5

**Argument**………………………………………………………………………………...6

     **Plaintiff is Entitled to Attorneys' Fees Because He is the Prevailing Party in this Action**………………………………………………………………………………..6

     **The Hourly Rates Sought are Reasonable**…………………………………………...8

     **The Hours Sought are Reasonable**……………………………………………………10

          **Case Development, Background Investigation and Case Administration**…..13

          **Pleadings**………………………………………………………………………...13

          **Interrogatories, Document Production, and Other Written Discovery**……...14

          **Depositions**……………………………………………………………………16

          **Motions Practice**………………………………………………………………...18

          **Attending Court Hearings**…………………………………………………...19

          **Trial Preparation and Post-Trial Motions** ……………………………………...19

          **Attending Trial**………………………………………………………………19

          **ADR**……………………………………………………………………….......19

          **Fee Petition Preparation**…………………………………………………...20

          **Course of Litigation**………………………………………………………20

     **The Presumptively Reasonable Lodestar is Reasonable Here**……………………21

     **Plaintiff is Entitled to Reasonable Litigation Expenses**……………………………..23

**Conclusion**………………………………………………………………………………27

## TABLE OF AUTHORITIES

**Cases**

*Abshire v. Walls*, 830 F.3d 1277 (4th Cir. 1987) ........................................................... 5

*Arto Cor. v. Lynnhavem Dry Storage Marina, Inc.*, 898 F.2d 953 (4th Cir. 1990) ...................... 21

*Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir.1978)................................................. 8

*Bd. of Educ. of Frederick Cty. v. I.S. ex rel. Summers*, 358 F. Supp. 2d 462 (D. Md. 2005) ......... 7

*Blum v. Stenson*, 465 U.S. 886(1984) ................................................................... 7

*Clark v. Sims*, 894 F. Supp. 868 (D. Md. 1995).......................................................... 7

*Daly v. Hill*, 790 F.2d 1071 (4th Cir. 1986)......................................................... 20, 24

*Dee v. Bd. of Educ. Of Baltimore City*, 165 F.3d 260 (4th Cir. 1998).................................. 7

*E.E.O.C. v. Freeman*, 126 F.Supp.3d 560 (D. Md. 2015) ................................................. 8

*Farrar v. Hobby*, 506 U.S. 103 (1992) ................................................................. 6

*Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008).............................................. 8

*Guerra v. NVA Utilities, LLC*, 8:13-cv-02997, Dkt. 24, Oct. 24, 2014. .................................. 10

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ....................................................... 5, 6, 7

*Holland v. Roeser*, 37 F. 3d 501 (9th Cir. 1994)...................................................... 20

*Hymes v. Harnett Cnty. Bd. of Educ.*, 664 F.2d 410 (4th Cir. 1981) ................................... 20

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)................................. 8

*Lefemine v. Wideman*, 758 F.3d 551 (4th Cir. 2014)................................................... 7

*Life Techs. Corp. v. Life Techs. Corp.*, No. RWT 10CV3527, 2012 WL 4748080 (D. Md. Oct. 2, 2012) ................................................................................................ 8

*Lopez v. XTEL Constr. Grp., LLC*, 838 F. Supp. 2d 346 (D. Md. 2012)....................................... 7

*Mercer v. Duke University*, 401 F.3d 199 (4th Cir. 2005).............................................. 6

*Newman v. Piggie Park Enterps., Inc.*, 390 U.S. 400 (1968) ........................................................ 7

*Perdue v. Kenny A.*, 559 U.S. 542 (2010) .................................................................................. 22

*Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639 (D. Md. June 8, 2015) ........................... 8

*Taylor v. Republic Servs., Inc.*, No. 1:12-CV-00523-GBL, 2014 WL 325169 (E.D. Va. Jan. 29,

    2014) ....................................................................................................................................... 27

*Thompson v. U.S. Dep't of Hous. & Urban Dev.*, No. CIV.A. MGJ-95-309, 2002 WL 31777631

    (D. Md. Nov. 21, 2002) ......................................................................................................... 8

*Wheeler v. Durham City Bd. of Ed.*, 585 F.2d 618 (4th Cir. 1978) ........................................... 24

**Statutes**

28 U.S.C. § 1920 ...................................................................................................................... 24

42 U.S.C § 1983 ..................................................................................................................... 1, 6

42 U.S.C § 1988 .................................................................................................................. passim

**Rules**

Fed. R. Civ. P. 11 ..................................................................................................................... 21

Fed. R. Civ. P. 54 ....................................................................................................................... i

L.C.v.R. 109.2 ............................................................................................................................ i

L.C.v.R. Appendix B ..................................................................................................... 2, 8, 9, 20

## INTRODUCTION

On March 20, 2017 this Court entered judgment against Defendant Alfie G. Acol in favor of Plaintiff Allan R. Sergeant following his acceptance of Defendant's $125,001.00 offer of judgment.  Dkt. 64.  Consistent with the offer of judgment, this Court ordered that "Plaintiff is entitled to the reasonable attorneys' fees to be determined by this Court."  *Id.*  Mr. Sergeant accepted the offer as compensation for the injury, humiliation, trauma, and violations of his fundamental rights that he suffered when Officer Acol unlawfully and unjustifiably strip-searched him in public.  Defendants' offer of judgment allowed Plaintiff to seek this Court's adjudication of reasonable attorneys' fees, to which he is entitled as a prevailing party in his action brought under 42 U.S.C § 1983, pursuant to 42 U.S.C § 1988.

Plaintiff engaged the Washington Lawyers' Committee for Civil Rights and Urban Affairs (the "WLC") and the Partnership for Civil Justice Fund (the "PCJF") as counsel.  Both the WLC and the PCJF are non-profit public interest organizations located in the District of Columbia who represented Mr. Sergeant on a *pro bono* basis.  The law is clear that public service organizations and *pro bono* counsel are entitled to fees as if they had charged Mr. Sergeant for his services at market rates.

Plaintiff is seeking reasonable fees and litigation expenses in this motion and has submitted detailed itemizations of fee records at Exhibits A and B.  As detailed in Declarations of counsel at Exhibits C-E, he is not seeking fees for duplicate work, *de minimus* items, or work done to advance unsuccessful motions or claims. Plaintiff has additionally exercised extensive billing discretion. Plaintiff's counsel, based in the District of Columbia, are requesting rates within the "Guidelines Regarding Hourly Rates" published in Appendix B of this Court's Local

Rules in this motion, which even at the upper end are a substantial reduction from their regular rates.

## NATURE OF THE CASE

Plaintiff Allan R. Sergeant brought a civil rights lawsuit under 42 U.S.C. § 1983 against Laurel Police Officers Alfie G. Acol and Thomas Houck.  As alleged in the operative Second Amended Complaint, Dkt. 27, on March 9, 2014, Officer Acol pulled over Mr. Sergeant on Route 1 in Laurel, MD into a CVS parking lot by its entrance doors.  The stop was made without legal justification.  Officer Acol then proceeded to have Mr. Sergeant step out of his car, patted down Mr. Sergeant twice, frisked him, and finding no contraband then unbuckled Mr. Sergeant's pants, pulled down his pants and his underwear, and searched his genital area, exposing his genitals and buttocks in public.  Mr. Sergeant was never under arrest and Officer Acol had no probable cause nor reasonable suspicion to search Mr. Sergeant, no lawful basis to conduct a strip search of Mr. Sergeant under any circumstances, let alone conduct a public strip search. No weapons, drugs or other contraband were ever found on Mr. Sergeant.  Office Houck witnessed the strip search and did nothing to intervene.  Mr. Sergeant protested throughout the search. After the search Mr. Sergeant stated that he wanted to file a complaint against Officer Acol. In response and retaliation, Mr. Sergeant was further detained and Officer Acol issued Mr. Sergeant a written warning.

Mr. Sergeant suffered severe emotional harm from the intrusive and degrading public strip search.  An expert report prepared by Dr. Joseph Gorin diagnosed Mr. Sergeant as having suffered from Post-Traumatic Stress Disorder at the time of the incident and that he continues to suffer from depression and anxiety because of it.

2

From the onset of the filing of the Complaint, Defendant decided to deny the fundamental facts underlying this matter and required Plaintiff to engage in comprehensive discovery in support of his case to overcome those denials. Upon the filing of the Complaint, the Laurel Police Department, on behalf of Defendant, issued a statement to the press denying that a strip search had occurred and stated that Plaintiff's assertion was "outrageous," despite the fact that the LPD had conducted a confidential internal investigation, reviewed and signed by the Chief of Police personally, that concluded that Officer Acol had conducted a public strip search of Mr. Sergeant in the absence of articulated facts to believe he was concealing anything illegal. Defendant filed an Answer with this Court denying basic facts about the encounter, even where such facts were known to be true by Acol and were later conceded during discovery. *See* Answer Presenting Defenses ¶34 (denying that Acol patted down Sergeant's body, including reaching into his pockets, finding no weapons or contraband); *id.* ¶39 (denying that Acol unbuckled Sergeant's belt); *id.* ¶40 (denying that Sergeant protested); *id.* ¶48 (denying he executed a strip search in a public area); *Id.* ¶50 (denying visual inspection of Sergeant's private parts); *id.* ¶67 (denying LPD conducted investigation and sustained multiple charges against Acol). It was only through Plaintiff's persistence in discovery that such key facts, and other essential elements supporting Mr. Sergeant's claims, were admitted or established.

Defendants resisted production of the LPD's internal report of investigation, necessitating preparation for a Motion to Compel and a November 21, 2016, pre-motion conference call with the Court and letter briefing after which defendants conceded the discoverability of the report (Dkt. 39 & 43).

Ultimately, in sworn deposition testimony Officer Acol admitted to subjecting Mr. Sergeant to a strip search. He admitted that he subjected Mr. Sergeant to a visual inspection of

his genital area on the sidewalk outside the CVS after a minor traffic stop and that based on his

Academy training he knew that to constitute a strip search. Acol admitted that Mr. Sergeant was

not in custody, a prerequisite for the conduct of a strip search. Acol also admitted he had no basis

to believe Sergeant was armed or dangerous or concealing contraband. Acol admitted in sworn

testimony that he knew that the Laurel Police Department found that he had conducted a strip

search of Mr. Sergeant that violated Department policy.

Even with these admissions that contradicted denials in his Answers, Acol maintained his

defense. Despite admittedly being on notice from Academy training that such public strip

searches were prohibited, Acol claimed in deposition testimony that the LPD instructed him such

searches were authorized if not standard procedure. Acol insisted that Sergeant consented to

being strip searched and attested that he thus did not stop when Sergeant protested "What are you

doing? I know my rights!" It was only through inquiry at Acol's deposition that Plaintiff

discovered that the LPD uses a form that civilians must sign if they consent to a search of their

person which, of course, Acol did not possess for Mr. Sergeant. An exemplar of that form was

produced by defendant after the fact of its existence was elicited in examination.

## CLAIMS ON WHICH PLAINTIFF PREVAILED

Mr. Sergeant's Second Amended complaint brought four claims:

1. Acol's violation of Mr. Sergeant's Fourth and Fourteenth Amendment Rights for the
   traffic stop;

2. Acol's violation of Mr. Sergeant's Fourth and Fourteenth Amendment Rights for the
   frisks of Sergeant;

3. Acol's violation of Mr. Sergeant's Fourth and Fourteenth Amendment Rights for Mr.
   Sergeant's strip search, and Houck's violation of the same for failing to intervene; and

4

4.  Acol and Houck's violation of Mr. Sergeant's First and Fourteenth Amendment Rights for issuing him a warning after he complained.

Mr. Sergeant prevailed on all four counts of his Second Amended Complaint.  On February 23, 2017, Mr. Sergeant accepted Defendants' Offer of Judgment to resolve all claims in this case.  Dkt. 59.  The offer was for "full satisfaction of all claims." Dkt. 59-1.  Even though the offer was for judgment against Officer Acol and not Officer Houck (who was alleged to have failed to intervene to stop the violations by Acol), Officer Acol was a party to each claim in the Second Amended Complaint.  Further Plaintiff needed to conduct the same factual inquiries for claims against Acol and Houck because the claims all related to and were intertwined with the same set of events.  There is no cause for reduction of attorney's fees for unsuccessful claims that are integrally related to the successful claims and arise out of a "'common core of facts.'" *Abshire v. Walls*, 830 F.3d 1277, 1282-83 (4th Cir. 1987) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)) (holding that District Court erred in reducing fees in a 1983 case where plaintiff only prevailed on one out of four claims but where the unsuccessful claims required the same factual development as the successful one).   Therefore Mr. Sergeant prevailed on all counts of his Second Amended Complaint.

## CLAIMS ON WHICH PLAINTIFF DID NOT PREVAIL

Mr. Sergeant originally brought claims against the City of Laurel and Chief of Police Richard McLaughlin under a *Monell* theory of liability.  He additionally brought claims under the Maryland Declaration of Rights and Maryland Common Law.  He dropped his *Monell* claims following Defendants' motion to dismiss.  Dkt. 14.  This Court later dismissed Mr. Sergeant's state law claims.  Dtk. 17.  Mr. Sergeant later sought to file a Third Amended Complaint incorporating information as to municipal liability that had been uncovered in discovery. The

Court denied plaintiff's Motion for Leave to Amend the Complaint to Add Claims of Municipal

Liability Related to LPD Training Policy.

Mr. Sergeant is not seeking fees for time spent on those claims and his itemized billing

has properly segregated and apportioned work on unsuccessful claims so that such work is not

charged. (Verheyden-Hilliard Decl. ¶ 13, Corkery Decl. ¶ 37)

## ARGUMENT

**I.      Plaintiff Is Entitled To Attorneys' Fees Because He is the Prevailing Party in This Action**

A plaintiff who prevails on claims that he brings under 42. U.S.C. § 1983 is entitled to

reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) ("In any action or proceeding to

enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing

party, other than the United States, a reasonable attorney's fee as part of the costs[.]").

The entitlement to such fees arises "when actual relief on the merits of his claim

materially alters the legal relationship between the parties by modifying the defendant's behavior

in a way that directly benefits the plaintiff." *Mercer v. Duke University*, 401 F.3d 199, 203 (4th

Cir. 2005) (citing *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). That legal relationship may be

changed by an enforceable settlement agreement, consent decree, or as here a judgment, indeed

even a judgment for nominal damages. *Farrar*, 506 U.S. at 113. Here, there is no dispute that

Mr. Sergeant is a prevailing party as judgment was entered in his favor against Defendants. *See

Hensley*, 461 U.S. at 433. The judgment was for the non-nominal amount of $125,001.00. Dtk.

64. Courts have only limited discretion in denying fee petitions to prevailing plaintiffs under §

1988:

> The purpose of § 1988 is to ensure "effective access to the judicial process" for
> persons with civil rights grievances. H.R. Rep. No. 94-1558, p. 1 (1976).
> Accordingly, a prevailing plaintiff "should ordinarily recover an attorney's fee

> unless special circumstances would render such an award unjust." S. Rep. No. 94-
> 1011, p.4 (1976) (quoting *Newman v. Piggie Park Enterps., Inc.*, 390 U.S. 400,
> 402 (1968).

*Hensley*, 461 U.S. at 429; *Lefemine v. Wideman*, 758 F.3d 551, 555 (4th Cir. 2014) ("'Courts

have universally recognized that [the] special circumstances exception is very narrowly

limited.'") (quoting *Dee v. Bd. of Educ. Of Baltimore City*, 165 F.3d 260, 264 (4th Cir. 1998));

*Clark v. Sims*, 894 F. Supp. 868, 870 (D. Md. 1995) ("The district court has limited discretion in

not awarding fees to a prevailing party.").  Here, there are no possible "special circumstances"

for which this Court should deny attorneys' fees to Mr. Sergeant.

The WLC and PCJF's status as non-profit public service organizations that take cases

like this one on a *pro bono* basis has no legal effect on Mr. Sergeant's entitlement to fees.  *Blum*

*v. Stenson*, 465 U.S. 886, 894-896 (1984).  Indeed the same measure of "prevailing market rates

in the community" is used no matter if counsel is non-profit or for profit.  *Id.* at 896 (holding that

the Legal Aid Society of New York was entitled to the same rates of attorneys' fees as a private

firm would be); *see also Lopez v. XTEL Constr. Grp., LLC*, 838 F. Supp. 346, 350 (D. Md.

2012) (citations omitted) ("[C]ourts have consistently held that entities providing pro bono

representation may receive attorney's fees where appropriate, even though they did not expect

payment from the client and, in some cases, received public funding."); *Bd. of Educ. of Frederick*

*Cty. v. I.S. ex rel. Summers*, 358 F. Supp. 2d 462, 467 (D. Md. 2005) ("Beveridge & Diamond is

not precluded from receiving a statutory fee award because it accepted the Summers' case on a

*pro bono* basis.").

The calculation of the award of attorney's fees requires first a determination as to the

lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended,"

*Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).  The Court may then apply the

twelve factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th

Cir.1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 (4th

Cir.1978).  "However, the Supreme Court has noted that the subjective *Johnson* factors provide

very little guidance and, in any event, that 'the lodestar figure includes most, if not all, of the

relevant factors constituting a "reasonable attorney's fee."'" *Reyes v. Clime*, No. PWG-14-1908,

2015 WL 3644639, at *2 (D. Md. June 8, 2015) (citations omitted).  In this matter the *Johnson*

factors do not warrant any downward adjustment from the lodestar amount.

## II.    The Hourly Rates Sought Are Reasonable .

The rates that Plaintiff is requesting in this fee motion are reasonable.  Those rates are

within the Guidelines of this Court's Local Rules' Appendix B. Courts in this District have found

that "Appendix B of the Local Rules for the District of Maryland sets forth presumptively

reasonable rates."  *E.E.O.C. v. Freeman*, 126 F.Supp.3d 560, 575 (D. Md. 2015); *Life Techs.*

*Corp. v. Life Techs. Corp.*, No. RWT 10CV3527, 2012 WL 4748080, at *2 (D. Md. Oct. 2,

2012) ("The requested hourly rates for counsel . . . fall within Appendix B's guidelines, and thus

are presumptively reasonable."); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, No. CIV.A.

MGJ-95-309, 2002 WL 31777631, at *12-13 (D. Md. Nov. 21, 2002) (finding that the

Guidelines are presumptively reasonable and awarding above-Guidelines fees).

The rates requested for counsel and paralegals are as follows:

| | | | |
|---|---|---|---|
| Carl Messineo | Years of Experience: 23 | Rate Sought: | $475 |
| Mara Verheyden-Hilliard: | Years of Experience: 23 | Rate Sought: | $475 |
| Matthew Handley | Years of Experience: 15 | Rate Sought: | $425 |
| Leah Watson | Years of Experience:  6 | Rate Sought | $300 |

| Dennis Corkery | Years of Experience: 5 | Rate Sought | $225 |
| Conrad Risher | Years of Experience  1 | Rate Sought | $225 |
| Sarah Sloan / paralegal: | Years of Experience: 10 | Rate Sought: | $150 |
| Samantha Weaver / paralegal: | Years of Experience 1 | Rate Sought | $150 |

Counsel include practitioners highly experienced in complex federal civil rights litigation including with particular expertise in police misconduct litigation. At the beginning of this matter, the case appeared to rest only on the word of the Plaintiff which was met with virtually blanket denials from the Defendant. In the absence of other available external evidence this "he said / he said" matter was not the type that many private firms would be willing to undertake, particularly when the case appeared to rest on the word of the Plaintiff against that of a police officer. *See e.g.* Exhibit, F, Sergeant Decl.  This matter required public interest counsel skilled in Section 1983 litigation and discovery to advance the matter to its positive resolution for the Plaintiff and to achieve a substantial measure of justice for him.

Plaintiff is also reasonable in seeking the upper end of the fee Guidelines because WLC's and PCJF's customary rates far exceed the rates listed that this Court's Local Rules use as "practical guidance" for fee petitions. L.C.v.R. Appendix B.  Attorneys Carl Messineo and Mara Verheyden-Hilliard of the PCJF, who have each been practicing for more than 20 years, are highly experienced attorneys in the area of complex federal civil rights litigation and in particular in police misconduct cases. (Ex C. Verheyden-Hilliard Decl. ¶¶ 3, 6-10; Ex. D. Messineo Decl. ¶¶ 3, 6-10). Attorneys Dennis Corkery and Matthew Handley of the WLC are also highly experienced civil rights attorneys who handle complex federal litigation. Ex. E, Corkery Decl. ¶¶ 4-15.  At the WLC, Visiting Attorney Leah Watson brought her experience as a litigator with two prominent D.C. law firms in her advocacy for Mr. Sergeant. *Id.* at ¶¶ 17-20.

9

Additionally, the rate sought at the highest end of the applicable range still represents a significant discount from counsels' normal market rates. (Verheyden-Hilliard Decl. ¶ 11, Messineo Decl. ¶ 11. Corkery Decl. ¶ 44-52) Mr. Sergeant's attorneys are based in the District of Columbia.  Mr. Sergeant initially sought counsel in Maryland After being told that the absence of video or other evidence rendered his case unlikely to succeed because a police officer denying that strip search occurred would be believed over him, and that he would need to come up with thousands of dollars for a private attorney to undertake representation, Mr. Sergeant sought recommendations for other counsel who would take his case *pro bono*. He was referred to the WLC. Ex. F., Sergeant Decl., ¶¶ 3-6.

Obtaining counsel from the District of Columbia was also entirely reasonable because Mr. Sergeant lived in or near the District when the incident happened and when the complaint was filed and because the incident described in the Complaint took place only fifteen miles from the District border.  The costs of practicing law in the District of Columbia are high, and the market rates for D.C. attorneys are commensurate with those higher costs.   Other courts have approved of the use of the upper end of the scale for the WLC for that very reason. *See Guerra v. NVA Utilities, LLC*, 8:13-cv-02997, Dkt. 24, Oct. 24, 2014.

Plaintiff is also submitting, as Exhibit I, the Declaration of Andrew D. Freeman.  Mr. Freeman is an attorney at the Maryland Plaintiffs' firm of Brown, Goldstein & Levy, LLP.  Ex. I, Freeman Decl. ¶¶ 2-4.  The rates that Plaintiff is requesting here are all less than the rates that his firm would charge if Plaintiff's counsel worked there.  *Id.* at ¶¶ 8-17.

### III.    The Hours Sought Are Reasonable

As explained in the declarations of Plaintiffs' counsel, the number of hours for which compensation is sought is reasonable.

The attorneys and other staff carefully documented the work they performed by maintaining contemporaneous time records and detailed the time spent broken down by date and activity. Counsel billed to the tenth of an hour. Plaintiffs' counsel also exercised substantial billing discretion in the submission of hours and costs, including the exclusion of *de minimis* phone calls, meetings, consultations and emails, and other no-billed time. (Verheyden-Hilliard Decl. ¶¶ 14-15, Messineo Decl. ¶¶ 13-14, Corkery Decl. ¶ 37.)

Throughout this litigation, counsel divided responsibilities for work in the case to avoid duplication of effort and have also exercised billing judgment to eliminate unnecessary or duplicative hours. Even where each individual counsel appropriately kept apace of litigation developments and reviewed filings and communications, counsel has no-billed for review where that individual counsel was not substantively or primarily involved in those specific activities. (Verheyden-Hilliard Decl. ¶¶ 14-15, Messineo Decl. ¶¶ 13-14). As above, Plaintiff has carefully segregated his billing records and has not charged for work on unsuccessful claims.

Plaintiff has provided itemized billing records detailing the work performed (Exhibits A, B) and the hours performed in each specified category are as follows:

| Litigation Phase | Hours Billed | Hours No-Charged |
|---|---|---|
| Case Development, including routine communications | PCJF: 50.80<br><br>WLC: 8.60<br><br>Total: 59.40 | PCJF: 19.80<br><br>WLC: 0.00<br><br>Total: 19.80 |
| Pleadings | PCJF: 67.30<br><br>WLC: 26.40<br><br>Total: 93.70 | PCJF: 39.00<br><br>WLC: 76.40<br><br>Total: 115.40 |

| Litigation Phase | Hours Billed | Hours No-Charged |
|---|---|---|
| Written Discovery | PCJF:  179.70<br><br>WLC:77.20<br><br>Total: 256.90 | PCJF: 21.90<br><br>WLC: 0.10<br><br>Total: 22.00 |
| Depositions | PCJF: 104.00<br><br>WLC: 31.40<br><br>Total: 135.40 | PCJF: 9.10<br><br>WLC: 10.40<br><br>Total: 19.50 |
| Motions Practice | PCJF: 21.80<br><br>WLC: 32.30<br><br>Total: 54.10 | PCJF: 1.80<br><br>WLC: 5.40[1]<br><br>Total: 7.20 |
| Attending Court Hearings | PCJF: 3.10<br><br>WLC: 7.20<br><br>Total: 10.30 | PCJF: 2.10<br><br>WLC: 2.60<br><br>Total: 4.70 |
| Trial Preparation | 0.0 | N/a |
| Attending Trial | 0.0 | N/a |
| ADR | PCJF 19.20<br><br>WLC: 22.80<br><br>Total: 42.00 | PCJF: 7.00<br><br>WLC: 6.90<br><br>Total: 13.90 |
| Fee Petition | PCJF: 51.10<br><br>WLC: 22:00<br><br>Total: 73.10 | PCJF:  6.50<br><br>WLC:  0:00<br><br>Total:  6.50 |

---

[1] This includes 1.30 hours spent by Staff Attorney Christine Tschiderer-Dinan in assisting in drafting the Opposition to the Motion to Dismiss.  That was the only time spent by her on this case.

| Litigation Phase | Hours Billed | Hours No-Charged |
|---|---|---|
| **TOTAL** | 727.90 | 209.00 |

Detailed line itemizations for the PCJF are located at Exhibit A and detailed line itemizations for the WLC are located at Exhibit B. Each set of itemizations are broken down by Litigation Phase according to this Appendix B of the Court's Rules.

1.  Case development, background investigation and case administration (includes initial investigations, file setup, preparation of budgets, and routine communications with client, co-counsel, opposing counsel, and the Court)

Services rendered in this category include case setup, initial meetings with Mr. Sergeant, investigation into claims and fact development; initial pre-Complaint communications with City Solicitor, background research into published reports and publicly available information regarding Officer Acol, background research on strip search claims and lawsuits,  routine communications between counsel or Plaintiff or opposing counsel (including quarterly fee statements) or the Court, and substantive communications that do not fall directly into another billing sub-category.

A substantial number of hours, 19.80, that otherwise fall into this category have been marked as "no charge" in the exercise of billing discretion.

2.  Pleadings

Services rendered in this category include preparation of the Complaint, the First Amended Complaint, and the Second Amended Complaint; research related to claims (excluding municipal liability claims) and qualified immunity defenses; meetings/communications between counsel regarding same; and meetings with Plaintiff to secure factual information in order to prepare pleadings.

13

A substantial number of hours, 115.40, that otherwise fall into this category have been marked as "no charge" either in the exercise of billing discretion or because the services are segregable and primarily in furtherance of unsuccessful *Monell* claims or to the unsuccessful motion to amend to a Third Amended Complaint to add municipal liability claims.

3. Interrogatories, document production, and other written discovery

Written discovery (and related deposition inquiry) was essential in this case, which had no identified witnesses to the underlying events aside from defendants and plaintiff, and in which there was a need to use discovery exclusively to undermine defendants' near categorical denials and defenses.

Services rendered in this category include propounding discovery including interrogatories and requests for production; preparation of client's responses to discovery including interrogatories and requests for production; obtaining additional information outside of client's possession in response to defendant's discovery requests; drafting of subpoenas to obtain additional document production; review of materials obtained in discovery; annotation and indexing of written discovery obtained in discovery; preparation of deficiency correspondence including related case law review; meetings/communications between counsel regarding same; and meetings with Plaintiff to confirm factual information and obtain responsive information.

With respect to discovery propounded to Mr. Sergeant, attorney and paralegal resources were expended in response to questions regarding the scope of Mr. Sergeant's damages and injury, including interviews with Mr. Sergeant, those in his circle of relationships who observed the substantial changes in his behaviors and mood from the date of the strip search, and communications with Dr. Gorin, the expert witness. Mr. Sergeant experienced harm that was akin to that of a sexual assault survivor, including shame, depression, impairments of

sexual/romantic relationship, recurrent intrusive thoughts, and symptoms of psychological trauma and injury that he was very uncomfortable self-describing.  This investigation required substantial factual development through interviews with Mr. Sergeant, interviews of lay witnesses, review of medical records, and work with the expert witness.

Defendants, in written discovery, pressed into matters factually detached from the underlying events and strip search in efforts to establish information that appeared calculated to be impeachment evidence, including Mr. Sergeant's employment and tax reporting history. Careful review of defendants' production in response to Plaintiff's written discovery was essential to establishing the truth of the multitude of factual issues that were categorically denied by defendants in each's Answer.  The initial round of material produced included un-transcribed recorded interviews, of varying sound quality that had to be examined, among other materials. Multiple factual and legal issues were in controversy, including the basis for the stops and searches, whether a strip search was performed, whether a strip search was authorized or prohibited by LPD policy or training, whether there was a claim of consent to be strip searched and the underlying factual basis for such claim, among other issues. Defendants refused to produce the Report of Investigation, personnel files of named defendants, policies and training materials, among other information, necessitating a detailed deficiency letter and follow up. Officer Acol asserted as a defense the claim that he had been trained in field training that his strip search of Mr. Sergeant was authorized if not standard procedure, necessitating close review of the daily narratives of each day of his entire field training history as was ultimately produced in response to plaintiff's persistence in discovery. During the course of depositions the existence of additional materials was revealed that had to be documented and demanded in another detailed deficiency letter, as such materials were not previously acknowledged or produced.

15

22.00 hours that would otherwise fall into this category have been marked as "no charge" in the exercise of billing discretion.

4.  Depositions (includes time spent preparing for depositions)

Services rendered in this category include preparing for and defending the Plaintiff's deposition including preparing the client; the preparation for and taking of depositions of Alfie Acol, Thomas Houck, Zachary Barry and Andrew Deroiun.

Mr. Messineo took the depositions that plaintiff noticed for Acol, Houck, Barry and Deroiun. There are no charges for deposition preparation or attendance at the deposition of Defendants or LPD employees from Mr. Corkery or Ms. Watson of the WLC. At these depositions, paralegal Sarah Sloan attended only where deemed necessary and attended only the examination of Officer Acol.

Only four depositions were taken by Plaintiff, a number that reflects a reasonable and tailored approach by Plaintiff's counsel. Officers Acol and Houck were the defendant officers who participated in the underlying events. The preparation for each's deposition required review of the audio-recorded statements each provided to investigator Corporal Zachary Barry, splicing and organizing of audio excerpts to be referenced as needed during the examination, review of related materials produced in written discovery, and careful preparation of lines of inquiry based on known facts and applicable legal standards to the claims and defenses, including qualified immunity.

The depositions of Officers Acol and Houck are obviously indispensible to the claims against Acol. Each's knowledge of events informed the collective police knowledge of any facts and circumstances that could justify the multiple searches of Mr. Sergeant (a pat down, a

subsequent search of the inside of his pockets, and the subsequent strip search) and the other facts/circumstances related to Mr. Sergeant's additional claims.

The deposition of Officer Houck, aside from providing factual information as a participant to the underlying events, further undermined Officer Acol's defense claims that such strip searches were authorized LPD practice. Houck attested that he was aware, at the time of events, that policy prohibited any form of strip search including on a consensual basis on a non-arrested person absent exigent circumstances; that officers were prohibited from conducting authorized strip searches in a public location; that he knew from training that a visual inspection of the genital area constituted a strip search. Houck did not possess any additional information based on his observations that would have justified the more intrusive strip search. He confirmed that he never heard words referencing or requesting consent to perform a genital area search. Houck confirmed that Mr. Sergeant was apprized of a right to refuse to be searched only after completion of the strip search.

In written discovery, Officer Acol identified five officials including the LPD Chief of Police who were personally involved in the investigation or review of the underlying events. Plaintiff deposed only one, Corporal Zachary Barry. Corporal Barry investigated the underlying events, including conducting recorded interviews of Officers Acol and Houck. Corporal Barry possessed independent knowledge of LPD training and policy with respect to strip searches and consent searches, including seeking out information to confirm or corroborate Officer Acol's claim he was trained in the routine conduct of strip searches or "dip area" searches by his field training officers. In deposition, Officer Acol claimed that due to nervousness he omitted details from his statement to Barry that he remembered years later at his deposition and asserted in his defense. Barry's testimony was sought to confirm that Acol was not displaying signs of

17

nervousness and was provided every opportunity (during and after the interview) to provide any information he viewed relevant to his defense or had forgotten to mention in his interview.

In written discovery, Officer Acol identified two additional officials who had "personal knowledge" of facts alleged in the complaint or averred in answer, Sergeant Jesse Conyngham and PFC Andrew Derouin, each of whom provided field training to Officer Acol. Plaintiff deposed only one of these officers, Officer Derouin, in order to inquire as to the truthfulness and accuracy of Officer Acol's defense (which related to punitive damages and qualified immunity) that he was trained to routinely conduct searches as he did to Mr. Sergeant. Officer Derouin emphatically and without reservation denied and contradicted Officer Acol's sworn testimony of such training.

As reflected in the itemization, reasonable time was expended in the substantial preparation of Mr. Sergeant for his deposition. His deposition, aside from presenting detailed factual narrative, was anticipated to go into deeply personal and intimate subject matter as to the harm he suffered as a consequence of the strip search. The harm to Mr. Sergeant's psyche was profound, and careful supportive preparation was needed to prepare him for deposition.  The defense of Mr. Sergeant's deposition was conducted by attorney Leah Watson with the assistance of paralegal Sarah Sloan. Mr. Corkery, Ms. Watson's supervisor, attended the deposition but has submitted no charge for his attendance.

19.50 hours that otherwise fall into this category have been marked as "no charge" in the exercise of billing discretion.

5.  Motions practice

Services rendered in this category include work in response to Defendant's Motion to Dismiss, work in preparation for Plaintiff's Motion to Compel production of the Report of

Investigation, work in preparation for a Motion to Compel certain depositions refused by defendants and for inquiry regarding Officer Acol's net worth which he refused to answer in deposition; and a Motion for Summary Judgment.

7.20 hours that otherwise fall into this category have been marked as "no charge" in the exercise of billing discretion.

6.  Attending court hearings

Services rendered in this category include preparation for and attendance at telephonic hearings with the Court and preparation therefor. 4.70 hours that otherwise fall into this category have been marked as "no charge" in the exercise of billing discretion.

7.  Trial preparation and post-trial motions

No time was billed to this category because judgment was entered before trial.

8.  Attending trial

No time was billed to this category because judgment was entered before trial.

9.  ADR

Services rendered in this category include discussion regarding settlement demands; research for developing settlement posture; settlement communications; drafting the mediation statement, preparation for and attendance at mediation with Judge Sullivan; matters related to the receipt and acceptance of the Offer of Judgment and its execution; meetings and communications among counsel and with plaintiff regarding settlement and the Offer of Judgment. Mr. Messineo, Ms. Verheyden-Hilliard, Mr. Corkery, and Ms. Watson all attended the mediation with Judge Sullivan, but only Ms. Verheyden-Hilliard and Mr. Corkery are seeking reimbursement for that time.

13.90 hours that otherwise fall into this category have been marked as "no charge" in the exercise of billing discretion.

10. Fee petition preparation

Plaintiff is also entitled to his time preparing his petition for fees in this matter. "Time spent defending entitlement to attorney's fees is properly compensable in § 1988 fee award." *Daly v. Hill*, 790 F.2d 1071, 1082-84 (4th Cir. 1986) (citing *Hymes v. Harnett Cnty. Bd. of Educ.*, 664 F.2d 410, 413 (4th Cir. 1981)). When offers of judgment allow for court adjudication of attorney's fees and are silent as to if those fees stop at the offer of judgment, attorney time spent after the offer of judgment is compensable. *Holland v. Roeser*, 37 F. 3d 501, 503 (9th Cir. 1994).

Services rendered for this category include review of detailed and lengthy billing itemizations to excise work product and exercise substantial billing discretion; segregation for non-billable claims; apportionment by category pursuant to Appendix B; research relevant case law for memorandum in support of fee petition and bill of costs; drafting of fee petition and bill of costs; communication and coordination among counsel for fee petition submission.

6.50 hours that otherwise fall into this category have been marked as "no charge" in the exercise of billing discretion. This amount of non-billed time does not account for the final proofreading, preparation, and filing of this Motion for Reasonable Attorneys' Fees and Litigation Expenses and exhibits and work performed on any reply memorandum that may need to be filed with this Court.

11.    Course of Litigation

It was Defendant's decision to require the litigation necessary in this case and to employ an approach of denial as to salient facts known to be true obligating Plaintiff to undertake

20

detailed discovery that uncovered key documents and to extract information in deposition testimony. Defendant required Plaintiff to engage in painstaking discovery to prove factual content in his Complaint that based on knowledge, belief and reasonable inquiry Defendant was without basis to deny in his Answer but did anyway.

Indeed, had this case not been brought under a fee shifting statute, much of Plaintiff's time pursuing discovery would still be compensable under Fed. R. Civ. P. 11 because Defendant filed Answers that denied nearly every single factual allegation in Plaintiff's complaint despite knowing at the time of the filing that certain key factual allegations were true and despite possessing documentary evidence that they were true. As discovery later revealed, and summarized above, there was no factual basis to deny that Officer Acol conducted a strip search of Mr. Sergeant. Answers that deny allegations in complaints without any factual support can be subject to Rule 11 sanctions where the remedy is attorney's fees. *Arto Cor. v. Lynnhavem Dry Storage Marina, Inc.*, 898 F.2d 953, 956-58 (4th Cir. 1990). In filing an Answer as a representation to the court:

> "an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> … the denials of factual contents are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Fed. R. Civ. P. 11(b)(2) (4).

## IV. The Presumptively Reasonable Lodestar is Reasonable Here

There is a strong presumption that the lodestar figure represents a reasonable award. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). In this case, which involved a substantial burden of proof upon Plaintiff to overcome the core factual denials by Defendants, there are no factors that would support a downward adjustment. Further, as detailed above and in the itemized billing

records at Exhibits A and B, Plaintiff has exercised substantial billing discretion in addition to the segregation of failed claims. As such the lodestar figures requested here are an appropriate and reasonable award.

| Litigation Phase | Hours Billed | Fees Requested | Fees No-Charged |
|---|---|---|---|
| Case Development, including routine communications | PCJF: 50.80<br><br>WLC: 8.60<br><br>Total: 59.40 | PCJF: $19,515.00<br><br>WLC: $1,742.50<br><br>Total: $21,257.50 | PCJF:  $7,877.50<br><br>WLC: $0.00<br><br>Total: $7,877.50 |
| Pleadings | PCJF:  67.30<br><br>WLC: 26.40<br><br>Total: 93.70 | PCJF: $29,790.00<br><br>WLC: $7,100.00<br><br>Total: $36,890.00 | PCJF:<br><br>$17,062.50<br><br>WLC:<br><br>$17,167.50<br><br>Total: $34,230.00 |
| Written Discovery | PCJF:  179.70<br><br>WLC:77.20<br><br>Total: 256.90 | PCJF: $68,295.00<br><br>WLC: $20,752.50<br><br>Total: $89,047.50 | PCJF: $9,752.50<br><br>WLC: $22.50<br><br>Total: $9,775.00 |
| Depositions | PCJF: 104.00<br><br>WLC: 31.40<br><br>Total: 135.40 | PCJF: $39,682.50<br><br>WLC: $8,857.50<br><br>Total: $48,540.00 | PCJF: $4,030.00<br><br>WLC: $2692.50<br><br>Total: $6,722.50 |
| Motions Practice | PCJF: 21.80<br><br>WLC: 32.30<br><br>Total: 54.10 | PCJF: $9,835.00<br><br>WLC: $7,267.50<br><br>Total: $17,102.50 | PCJF: $822.50<br><br>WLC: $1,215.00<br><br>Total: $2,037.50 |

| Litigation Phase | Hours Billed | Fees Requested | Fees No-Charged |
|---|---|---|---|
| Attending Court Hearings | PCJF: 3.10<br><br>WLC :7.20<br><br>Total: 10.30 | PCJF: $1,472.50<br><br>WLC: $1,830.00<br><br>Total: $3,302.50 | PCJF: $900.00<br><br>WLC: $585.00<br><br>Total: $1,485.00 |
| Trial Preparation | 0.0 | $0.00 | $0.00 |
| Attending Trial | 0.0 | $0.00 | $0.00 |
| ADR | PCJF: 19.20<br><br>WLC: 22.80<br><br>Total: 42.00 | PCJF: $8,502.50<br><br>WLC: $5,145.00<br><br>Total: $13,647.50 | PCJF: $3,260.00<br><br>WLC: $1,830.00<br><br>Total: $5,090.00 |
| Fee Petition | PCJF: 51.10<br><br>WLC: 25.00<br><br>Total: 76.10 | PCJF: $22,127.50<br><br>WLC: $5,625.00<br><br>Total: $27,752.50 | PCJF: $3,087.50<br><br>WLC: $0.00<br><br>Total: $3,087.50 |
| **TOTAL** | PCJF: 497.00<br><br>WLC: 230.90<br><br>**Total: 727.90** | PCFJ:<br><br>$199,220.00<br><br>WLC: $58,320.00<br><br>**Total:**<br><br>**$257,540.00** | PCFJ:<br><br>$46,792.50<br><br>WLC:<br><br>$23,512.50<br><br>**Total:**<br><br>**$70,305.00** |

## V.   Plaintiff is Entitled to Reasonable Litigation Expenses

Plaintiff also requests that this Court award $5,560.41 in reasonable litigation expenses. 42 U.S.C. § 1988 allows prevailing plaintiffs to petition for litigation costs that are not otherwise taxable because Congress intended attorney fee awards to properly reimburse plaintiffs' counsel

for bringing civil rights actions.[2]  *Daly*, 790 F.2d at 1082-84 (internal footnotes omitted) (holding

that a prevailing plaintiff's counsel in a § 1983 case may petition the Court for an award of

nontaxable litigation expenses as part of an attorneys' fees award).  The scope of allowable costs

under 42 U.S.C. § 1988 is much broader than those taxable under 28 U.S.C. § 1920.  *Id.* at 1084;

*Wheeler v. Durham City Bd. of Ed.*, 585 F.2d 618, 623-24 (4th Cir. 1978) ("Litigation expenses

such as supplemental secretarial costs, copying, telephone costs and necessary travel, are

integrally related to the work of an attorney and the services for which outlays are made may

play a significant role in the ultimate success of litigation.").  Indeed this Court's local rules

allow Plaintiffs to request reimbursement for "reasonable out-of-pocket expenses" overnight

delivery services, travel, and copy work.  L.C.v.R. Appendix. B.

Plaintiff is requesting reimbursement in the amount of $5,560.41.  The reimbursement is

for photo copying and printing; local travel to important meetings with client and co-counsel,

mediation, and depositions; telephone and fax charges; postage and delivery; other litigation

expenses; and expert fees.  The expenses are listed below and where appropriate, documented

with receipts attached as Exhibit G and H.

| Category | Amount Requested |
|---|---|
| Copying and duplicating | PCJF: $577.50<br><br>WLC: $686.95<br><br>Total: $1,264.45 |
| Local Travel | PCJF:  $0.00<br><br>WLC: $75.10<br><br>Total: $75.10 |

[2] Plaintiff is not requesting the $2,590.00 in taxable expenses that he requested in his Bill of Costs, Dkt. 65, and to which Defendant has no objection, Dkt. 69.

| Category | Amount Requested |
|---|---|
| Telephone and fax: | PCJF:  $0.00<br><br>WLC:$11.06<br><br>Total: $11.06 |
| Postage and Delivery | PCJF:  $0.00<br><br>WLC: $41.80<br><br>Total: $41.80 |
| Other litigation expenses: | PCJF:  $0.00<br><br>WLC:$545.00<br><br>Total: $545.00 |
| Expert fees: | PCJF: $3,623.00<br><br>WLC: $0.00<br><br>Total: $3,623.00 |
| **TOTAL** | PCJF: $4,200.50<br><br>WLC: $1,359.91<br><br>**Total: $5,560.41** |

The "other litigation expense" above includes costs related to depositions.  $145.00 in costs related to the process fees for deposition transcripts, which Plaintiff did not include in his bill of costs and are detailed in Exhibit G.  $400 of these costs are for the use of conference rooms for the depositions of Thomas Houck and Zachary Barry.  The need for those rooms is described in Plaintiffs Bill of Costs, to which Plaintiff respectfully directs this Court's attention. Dkt. 65 at 3.  Defendant has objected to the inclusion of these fees in Plaintiff's Bill of Costs,

Dkt. 67, and therefore, Plaintiff includes them here as an alternative basis for reimbursement. Should this Court believe they were properly included in the Bill of Costs, Plaintiff withdraws his request for them here.

Plaintiff is also requesting $3,632.00 for reimbursement of expenses paid to his expert, Dr. Joseph Gorin.  His curriculum vitae is included in Exhibit H.  $195 of that amount is for one hour spent preparing and scanning documents to be sent to Defendants' consulting expert at Defendant's request. The remainder is for the evaluation of Mr. Sergeant's psychological condition and the preparation of an expert report that was produced to Defendants.  Invoices of his services are included in Exhibit H.

Plaintiff's compensatory damages were for the injury, pain, suffering, humiliation and injury that were caused by underlying violations. Mr. Sergeant did not claim medical expenses or seek compensation for lost wages. Plaintiff intended to call Dr. Gorin at trial to explain to the jury the extent of Mr. Sergeant's injuries. Specifically that within one month of the incident Mr. Sergeant reported sufficient symptomatology to warrant a diagnosis of post-traumatic stress disorder (PTSD). According to Dr. Gorin, two and half years after the event, Mr. Sergeant's symptomatology had decreased such that he no longer has a current diagnosis of PTSD, but continued to present with clinically significant intrusive ideations, depression, anxiety and concerns regarding intimacy that are consistent with the intimate intrusiveness of the underlying strip search, as well as consistent with an absence of malingering or exaggeration.

As such, the use of Dr. Gorin was important to Plaintiff's prosecution of his case and in achieving the $125,001 judgment to compensate him for those injuries.  "Under 42 U.S.C. § 1988(c), a court, in its discretion, may include expert fees as part of the attorney's fee." *Taylor v. Republic Servs., Inc.*, No. 1:12-CV-00523-GBL, 2014 WL 325169, at *13 (E.D. Va. Jan. 29,

2014) (awarding $67,746.50 in expert fees in a Title VII case).   Plaintiff respectfully requests

that this Court exercise its discretion to award these reasonably necessary expert fees.

## CONCLUSION

For the foregoing reasons and the details set out in the following attachments, Plaintiff

Allan R. Sergeant respectfully requests that this Court award him $257,540.00 in reasonable

attorneys' fees and $5,560.41 in reasonable litigation expenses.

Dated April 20, 2017                                            Respectfully submitted,

                                                  /s/ Dennis A. Corkery
                                                  Matthew K. Handley (D.C. Bar No. 18636)
                                                  Dennis A. Corkery (D. Md. Bar No. 19076)
                                                  WASHINGTON LAWYERS' COMMITTEE
                                                    FOR CIVIL RIGHTS AND URBAN
                                                  AFFAIRS
                                                  11 Dupont Circle, Suite 400
                                                  Washington, DC 20036
                                                  Phone: (202) 319-1000
                                                  Email: matthew_handley@washlaw.org
                                                  Email: dennis_corkery@washlaw.org
                                                  *Counsel for Plaintiff*

                                                  Carl Messineo (D. Md. Bar No. 015013)
                                                  Mara Verheyden-Hilliard (D. Md. Bar No.
                                                  015014)
                                                  PARTNERSHIP FOR CIVIL JUSTICE FUND
                                                  617 Florida Avenue NW
                                                  Washington, DC 20001
                                                  Phone: (202) 232-1180
                                                  Email: cm@justiceonline.org
                                                  Email: mvh@justiceonline.org
                                                  *Counsel for Plaintiff*

27

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2017, I caused the foregoing Motion for Reasonable

Attorneys' Fees and Litigation Expenses and Memorandum of Law and Points of Authorities in

Support Thereof to be served via this Court's CM/ECF system on all counsel of record.

/s/ Dennis A. Corkery
Dennis A. Corkery