# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

|  |  |  |
|---|---|---|
| **ALLAN SERGEANT,** | * |  |
| **Plaintiff,** | * |  |
|  | * |  |
| **v.** | * | **Case No.: PWG-15-2233** |
|  | * |  |
| **ALFIE ACOL,** *et al.***,** | * |  |
| **Defendants.** | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

After accepting a Rule 68 offer of judgment in this case alleging various violations of the First and Fourth Amendments pursuant to 42 U.S.C. § 1983, Plaintiff Allan Sergeant now has filed a motion for attorneys' fees and costs. Sergeant seeks fees at hourly rates within the ranges set by the Local Rules for the time spent on this matter by his attorneys. Acol argues that paying Sergeant the full lodestar amount would be excessive because Sergeant did not engage in meaningful settlement discussions, employed too many attorneys, and the difficulty of the case did not warrant the hours billed. After evaluating Sergeant's billing statements and the parties' arguments, I am awarding Sergeant attorneys' fees in the amount of $202,836.56 and costs in the amount of $1,723.41.[1]

---

[1] This sum is for all services rendered by counsel and does not allocate any specific individual amount to either of the two organizations that represented Sergeant. Further, the individual allocations throughout this opinion should not be understood as subtracting one individual's work at the expense of another. In this case, Partnership for Civil Justice Fund ("PCJF") always billed at a substantially higher rate than the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("WLC") and when there was double billing or I awarded a certain number of

## Background

Allan Sergeant initiated this lawsuit after being stopped by Officer Alfie Acol in March 2014. Am. Compl. ¶ 13. During the stop, Acol frisked Sergeant and then conducted a public strip search by "pull[ing] SERGEANT's underwear down to just above his knees, exposing his genital and anal areas" outside a CVS in Laurel, MD. *Id.* ¶¶ 13, 31, 44–45.

During the litigation, Acol and the other Defendants moved to dismiss many of the claims Sergeant brought against Acol, Thomas Houck, a fellow officer, the chief of the Laurel Police Department, the Laurel Police Department ("Police Department"), and the City of Laurel, Maryland ("Laurel"). ECF No. 12. In his Opposition to the Motion to Dismiss, ECF No. 14, Sergeant voluntarily dismissed the three counts alleged against the chief of the Police Department, the Police Department, and Laurel. In my memorandum opinion and order, I found that the four state constitutional tort claims did not comply with the notice requirements of the Local Government Tort Claims Act ("LGTCA") and dismissed all four claims. Order, ECF No. 16. As such, four federal law claims pursuant to § 1983 remained: two Fourth Amendment claims against Acol, one Fourth Amendment claim against Acol and "Doe," and one First Amendment claim against Acol and "Doe." *Id.* "Doe" was later amended to Houck. Second Am. Compl., ECF No. 27.

On March 6, 2017, Sergeant filed a motion for entry of judgment in this matter after the parties had negotiated a settlement before Magistrate Judge Sullivan. ECF No. 63. The settlement followed Sergeant's acceptance of an offer of judgment Defendants made pursuant to Fed. R. Civ. P. 68. *See* ECF No. 59. This judgement only was against Acol in the amount of

---

hours for a given task, I used PCJF's billing rate as some hours were always completed by PCJF. Therefore, there are instances when there is combined work and it has not been individualized as to award a given amount to PCJF or WLC.

$125,001.00, plus any reasonable attorneys' fees to be determined by the Court. Or. J., ECF No. 64. Sergeant has moved for attorneys' fees in the amount of $279,158.00 for services provided by the Partnership for Civil Justice Fund ("PCJF") and the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("WLC"), as well as $1,723.41 in litigation expenses. Pl.'s Mot., ECF No. 70., Pl.'s Reply, ECF No. 80.[2]

## <u>Discussion</u>

Title 42 United States Code § 1988 provides that in an action brought under 42 U.S.C. § 1983, such as this one, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." Because judgment has been entered in Plaintiff's favor, there is no dispute that he is the prevailing party entitled to attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("'plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)). Further, the parties agreed that the entry of judgment was for $125,001.00 and, if any, reasonable attorneys' fees to be awarded to Sergeant. Def.'s Offer of J., ECF No. 59-1; Or. J.

In calculating an award of attorneys' fees, the Court first must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award" (internal citations

---

[2] The parties fully briefed the motion. ECF Nos. 70, 75, 80. A hearing is not necessary. *See* Loc. R. 105.6.

omitted)).  "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  In determining whether the lodestar results in a reasonable fee, this Court evaluates "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc*., 577 F.2d 216, 226 (4th Cir. 1978)."  *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted).  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717–19).  However, the Supreme Court has noted (and experience awarding attorneys' fees has confirmed) that the subjective *Johnson* factors provide very little guidance and, in any event, that "'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'"  *Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 549, 566 (1986)).  After the lodestar number is calculated, "the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'  Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'"  *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (citing *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243–44 (4th Cir. 2009).

In calculating the lodestar amount, the party seeking fees "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (concluding, after an initial determination that the attorney's hourly rate was reasonable for the particular district, that attorney's fees requested by Plaintiff were reasonable based on documentation of hours worked and tasks completed); *Flynn v. Jocanz*, 480 F. Supp. 2d 218, 220–21 (D.D.C. 2007) (awarding requested attorneys' fees based on affidavits and the record).

Also of import, Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, provides the following "Guidelines Regarding Hourly Rates":

    a. Lawyers admitted to the bar for less than five (5) years: $150–225.

    b. Lawyers admitted to the bar for five (5) to eight (8) years: $165–300.

    c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225–350.

    d. Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275–425.

    e. Lawyers admitted to the bar for twenty (20) years or more: $300–475

    f. Paralegals and law clerks: $95-150.

Loc. R. App'x B ¶ 3 (footnote omitted). However, these Guidelines are not definitive; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6. The Court may also consider "affidavits of lawyers in the [relevant] legal community attesting to the customary rates charged for [similar matters]." *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509–10 (D. Md. 2000).

Here, Plaintiff seeks a total of $279,158.00 in attorneys' fees for services provided by PCJF and WLC, as well as $1,723.41 in costs. Pl.'s Reply 1. As required by this Court's local rules, Plaintiffs have provided itemized billing entries, *see, e.g.*, PCJF Billing Entries, ECF No.

70-1; WLC Billing Entries, ECF No. 70-2; Reply Expenses, ECF No. 80-2. Sergeant also has filed declarations setting forth the experience level of each person who recorded time on his case. Verheyden-Hilliard Decl., ECF No. 70-3; Messineo Decl., ECF No. 70-4; Corkery Decl., ECF No. 70-5; Freeman Decl., ECF No. 70-9. Acol does not dispute Plaintiff's hourly rates, but does argue that the hours Plaintiff's counsel billed are excessive and should be reduced. Def. Opp'n 1. Accordingly, Acol proposes that Plaintiffs' fee request be reduced by 50%, for an award of $128,770,[3] or otherwise substantially reduced. *Id.* at 43. Acol also opposed Sergeant's costs for copying, telephone, postage, room rental for a deposition, and an expert's fee. *Id.* at 42. Sergeant withdrew a charge of $750.00 for WLC reviewing the draft third amended complaint, for compensation for the expert witness fees in the amount of $3,437.00, and the deposition meeting room in the amount of $400. Pl.'s Reply 21, 39.

The mere fact that Plaintiff has set forth the attorneys' fees based upon time actually expended by his attorneys does not require me to take them at their word when calculating the lodestar amount; rather, Plaintiffs only are entitled to a "*reasonable* hourly rate multiplied by hours *reasonably* expended." *Grissom*, 549 F.3d at 320 (emphasis added); *see also Hensley*, 461 U.S. at 433–34 ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'"). Defendants do not oppose the rates Plaintiff's counsel seek, and I find them reasonable as they are within the guidelines set by this Court's Local Rules— despite all of them being at the highest acceptable rate. Although the declarations Sergeant has filed do not indicate the years each of the attorneys began practicing, they do note the years each graduated from law school. *See, e.g.* Messineo Decl. ¶ 3; Verheyden-Hilliard ¶ 3. Given each of

---

[3] Defendant stated Plaintiff's attorneys' fees should be reduced by 50% when Plaintiff was claiming fees of $257,540.00. After Defendant's Opposition, Plaintiff withdrew $750.00 in fees and $3,837 in expenses but increased the amount sought for his fee petition by $22,368.00 in connection with drafting his Reply. Pl.'s Reply 1.

the attorney's graduation dates and declared experience, I find each to be billing at a reasonable rate. Therefore, I will adopt the following rates as proposed by Sergeant:

1. Attorney Carl Messineo: $475 per hour

2. Attorney Mara Verheyden-Hilliard: $475 per hour

3. Attorney Matthew Handley: $425 per hour

4. Attorney Leah Watson: $300 per hour

5. Attorney Dennis Corkery: $225 per hour

6. Attorney Conrad Risher: $225 per hour

7. Paralegal Sarah Sloan: $150 per hour

8. Paralegal Samantha Weaver: $150 per hour

However, even if the rate at which an attorney is billing is reasonable, the hours he or she spends on given tasks also must be reasonable. Although "there is a 'strong presumption' that the lodestar figure is reasonable," *Perdue*, 559 U.S. at 554, the Fourth Circuit has reaffirmed the applicability of the *Johnson* factors even when those factors appear to be subsumed into the lodestar calculation, *McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013). In evaluating the *Johnson* factors, Plaintiff's billing statements fail to demonstrate the full award is warranted, particularly given the number of attorneys, the claimed level of experience, and the complexity of the matter.

As Acol points out, there are a number of instances where Sergeant's counsel spent an excessive amount of time when compared to the cited experience of counsel or that too many individuals were assigned to a particular matter. For example, Carl Messineo of PCJF is a highly experienced attorney who has 23 years of relevant experience; however, he has billed 51 hours for work relating to the Complaint in this matter. *See* PCJF Billing Entries 23–35. These

charges are in addition to other attorneys and paralegals spending an additional 30 hours on the Complaint, and according to his billing statements, does not include the case development required to initiate the litigation. In contemplating the *Johnson* factors, it is difficult to conclude that an attorney with so much experience would need to spend 51 hours on a complaint, which required additional attempts to amend and many of the counts in it still were dismissed. I find that a reasonable amount of time to have spent on this Complaint and the amended versions of it would have been a total of 35 hours or $16,625. I also will not include in the lodestar calculation the majority of the remaining hours attributed to the Complaint as I find them excessive. *See Dause v. Broadway Servs., Inc.*, JKB-11-3136, 2012 WL 1131524, at *2 (D. Md. Apr. 3, 2012) (reducing and limiting attorneys' fees to a collective amount given the experience of the attorneys in the litigation and the complexity of the matter). I find an additional amount of $992.50 or 3.3 hours of combined attorney time on other pleadings matters reasonable.[4] Therefore, I have adjusted the Pleadings portion of Sergeant's fees to $17,617.50.

*Written Discovery and Depositions*

Sergeant requests $136,459.50 for legal services connected with his written discovery and depositions. Acol's primary objection is that Sergeant did not engage in meaningful settlement negotiations and therefore much of the discovery that took place in this litigation did not need to occur. Def. Opp'n 31. Acol also believes that the written discovery requests were "standard requests," and therefore, the amount of time spent to draft and review the requests was

---

[4] In this litigation, and particularly with the pleadings, two organizations represented Sergeant and there is neither a clear indication as to how the work was divided between them nor why both organizations were employed. As a result, there are numerous meetings and communications between the two organizations discussing this litigation that may be considered "double billed" because ordinarily these items would constitute intraoffice meetings. In my opinion this inflated the number of billable hours required in order to perform the appropriate amount of work and potentially led to inefficient outcomes.

excessive. *Id.* at 32. The remaining objections appear to all regard the information Sergeant did or may have turned over to Acol in the litigation. *Id.* at 33–35. Discovery is governed by Fed. R. Civ. P. 26, which permits parties to conduct discovery so long as it is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Acol's position underestimates the type of written discovery that was required in this case. Sergeant's argument is persuasive in that the written discovery he requested and received was an important contribution to his success. *See* Pl.'s Mot. 21. And, even if there had been meaningful settlement discussions at the beginning of the discovery period, this would not have guaranteed settlement because Sergeant may not have been in a position to assess the strengths and weakness of his case without having received discovery from Defendants. I do, however, agree with Acol that some of the items billed were unreasonable.

Based upon the billing statements, it appears Sergeant's counsel spent a combined 256.9 billable hours or $89,137.00 on written discovery and 133.1 billable hours or $47,322.50 on depositions. I find that this amount, which exceeds the total amount recovered, is disproportionate and unreasonable, given the issues raised by the pleadings. *See* Fed. R. Civ. P. 26(b)(1); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (reducing fee calculation hours that were not reasonably expended that were "excessive, redundant or otherwise unnecessary"); *Ohio Valley Envtl. Coal., Inc. v. Fola Coal Co., LLC*, No. CV 2:13-5006, 2016 WL 8252928, at *4 (S.D. W. Va. Aug. 30, 2016) (reducing the hours in discovery when alternative methods of conducting work and staffing matters were available). Further, reductions appear to be necessary because some of the billing statements for the written discovery appear to duplicate entries (*see, e.g.*, entries for Leah Watson on December 16–21, 2016, PCJF Billing Entries 26–27), as well as there appears to be excessive amounts of time taken to review

documents and prepare responses.  *See Key Gov't Fin., Inc. v. E3 Enter. Inc.*, 2 F. Supp. 3d 741, 754–755 (D. Md. 2014) (finding overstaffing the matter by using six attorneys and three paralegals and duplication of work warranted a reduction of hours, which was applied by assessing an approximate one-third reduction across all hours).  As such I will reduce the amount claimed for Sergeant's written discovery request by 15 percent, which reduces the amount claimed for written discovery to $75,766.45.  *See id.*  I now will turn to the amount he seeks for deposition discovery.

Acol also objects to the amount of time spent by both organizations on the preparation of and participation at the depositions in this manner.  Def.'s Opp'n 34–36.  Acol again believes the amounts billed to be excessive and a result of too many attorneys working on this manner.  *Id*. As both parties identified, outside an agreement to increase the number of hours, my Discovery Order restricted the deposition of any fact witness to four hours per witness.  *See* Discovery Order ¶ 9, ECF No. 19-1.  In this case, Sergeant and Acol were deposed as well as Officer Houck, Corporal Berry, and Force Training Officer Derouin.  Neither Houck, Berry, nor Derouin were deposed for four hours.  PCJF Billing Entries 80–81.  In total, approximately nine and one-half hours were spent deposing Sergeant, Acol, and Houck and at most four hours were spent combined deposing Berry and Derouin for a total of 13.5 hours.[5]

Sergeant's counsel has billed 130.1 hours for work surrounding these five depositions. Upon examination of Sergeant's invoices, I find that Sergeant only has included one attorney at the depositions and one paralegal at the depositions of Sergeant and Acol.  *See* WLC Billing Entries 32; PCJF Billing Entries 74–75.  This is pursuant to the Local Rules and I find the

---

[5] Acol is uncertain how long the Berry and Derouin depositions lasted and PCJF's billing entry is for a total of 4.2 hours on February 16, 2017, which includes travel.  *See* Def.'s Opp'n 35; PCJF Billing Entries 81.

inclusion of one paralegal acceptably within the exception to the Local Rules where a second individual may be present to assist.[6] Loc. R. App'x B ¶ 2.

However, Sergeant's counsel still spent 42 additional hours preparing to defend Sergeant's deposition and 29.7 hours for Acol's deposition. In particular, four attorneys spent time preparing for Sergeant's deposition despite two of them not being present when it was taken and then did substantial follow-up after his deposition. While I acknowledge that preparing a client in advance of his deposition and for an attorney to prepare to defend him may take time, I do not find it reasonable for attorneys and paralegals to spend 42.6 hours on a deposition that lasted under four hours. The 24.8 hours[7] ($7,440.00) worked by Leah Watson, the lead attorney on Sergeant's deposition, *see, e.g.*, PCJF Billing Entries 74, and the 11.8 hours ($1,770.00) worked by Paralegal Sarah Sloane in preparation for and to attend Sergeant's deposition are reasonable.[8] *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986) (affirming the district court's reduction in the number of hours for depositions because of duplicated efforts and relying predominately on the hours of the primarily responsible attorney). Further, the billing statements do not provide any more light as to what work each individual contributed, which suggests that there was duplication of effort because some explanations are as vague as "Depo prep for

---

[6] The Local Rules permit two attorneys when one attorney "organized numerous documents important to the deposition but the deposition is of a critical witness whom the more senior attorney should properly depose." Appendix B ¶ 2(b). Given that a paralegal bills at a lower rate than having another attorney participate in the deposition, I believe it to be reasonable.

[7] A few of the entries by Leah Watson state "prepare for deposition." *See e.g.*, WLC Billing Entries 31. I have attributed these entries as preparation for Sergeant's deposition as it is the only deposition to which it appears Watson was assigned.

[8] Although it does not appear that Leah Watson completed any of the work on Sergeant's deposition after its conclusion, the 24.8 hours total spent by an attorney of her experience was sufficient to prepare for, conduct, and then complete any remaining work after the deposition. Some of this work would be expected to have been completed in a quicker manner depending on the experience of the attorney, and therefore, I would have reduced this figure further had it been completed by one of the two most experienced attorneys working on this litigation as I will do with the work on Acol's deposition.

Sergeant." *See Hudson v. Pittsylvania Cty.*, No. 4:11CV00043, 2013 WL 4520023, at *6 (W.D. Va. Aug. 26, 2013) ("Awards for time expended by two or more counsel are proper, provided they reflect the *distinct contribution* of each lawyer to the case.") (emphasis added); *Goodwin v. Metts*, 973 F.2d 378, 384 (4th Cir. 1992) (finding that four attorneys constituted overstaffing when two could have accomplished the task at hand). Some of the items clearly are duplicates as the billing descriptions are almost identical. *Compare* entry by Mara Veheyden-Hilliard on December 2, 2016 *with* entry by Carl Messineo on December 2, 2016, PCJF Billing Entries 73; *see also Dause*, 2012 WL 1131524, at * 2 (citing *Schlacher v. Law Ofices of Phillip J. Rotche & Associates, P.C.,* 574 F.3d 852, 858 (7th Cir. 2009) ("overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees")). I will include an additional 5 hours for any and all work conducted after the conclusion of Sergeant's deposition at Carl Messineo's rate (who contributed some of the work) for a total of $2,375.00.

Regarding Acol's deposition, I also find the hours billed unreasonable. In particular, I doubt that a highly experienced attorney would require 24 hours to prepare for a four hour deposition with an additional 7.3 hours of assistance from his paralegal. To prepare for Acol's deposition Carl Messineo spent 9.2 hours annotating audio taped statements and conducting legal research on "strip search cases, scope of consent cases, reasonable suspicion for the seizures and searches in the fact narrative." PCJF Billing Entries 73–74, 77. Then he spent 6.9 hours "prepar[ing] for deposition of Acol; prepared questions based on categorization for Acol's full denials in Answer of key facts, corresponding written and audio material in discovery, requirements of proof, related case law." *Id.* After the deposition Messineo coded and annotated the transcript for 4.3 hours, *id.* at 76, and spent an additional 3.2 hours researching "case law []

on searches and seizures, reasonableness of strip or body cavity and Acol's claimed defenses," *id.* at 77. While I acknowledge that some research was necessary, an attorney with his equivalent experience should not require that extensive amount of research (at least 6 hours) on a matter that is within his claimed area of expertise. *See* Messineo Aff. ¶¶ 6–7. Based on the second (novelty or difficulty of the question), third (the skilled required), and ninth (the experience and ability of the attorney) *Johnson* factors, I will reduce this by 3 hours based on the excessive research conducted and will further reduce the deposition preparation and subsequent work by 6 hours because based on the details provided, it could reasonably have been completed in that amount of time. As I found with the deposition of Sergeant, I find the 12.8 hours, inclusive of attendance at the deposition by Sloane to be reasonable and in accordance with the exception of the Local Rules. For work related to Acol's deposition, I will include in the lodestar calculation 20.5 hours, inclusive of his attendance at the deposition, at Messineo's rate or $9,737.50 and 12.8 hours at Sloane's rate or $1,920.00.

There is outstanding 38.2 hours of work for tasks related to the three other depositions as well as miscellaneous deposition related items such as communications, meetings, and annotating transcripts. Within this amount of time there was 3.1 hours spent traveling to and attending the Houck deposition and 4.2 total hours traveling to and attending the Derouin and Berry depositions. PCJF Billing Entries 80–81. While many of the remaining hours appear reasonable, Acol objects to the preparation for the depositions and asserts that Messineo spent an excessive amount of time on drafting a list of proposed additional deponents. *See* Def.'s Opp'n 34–36. Acol calculates the preparation for the final three depositions at 22.9 hours. *See id.* at 39–40. In reviewing Sergeant's billings statements, I find many of these charges to be reasonable and will not reduce them. However, I take issue with one charge. I understand that

Messineo would assess whether additional depositions were necessary, but I will limit that time to 2 hours instead of the 3.3 hours he has billed. Therefore, I find the remaining hours in Sergeant's billing statements for depositions in the amount of 36.9 hours or $16,205.00 for his attorneys and paralegals to be reasonable.

When my reductions are taken into account Sergeant's billable hours for depositions and written discovery amount to $115,213.95.

*Fee Petition*

Sergeant petitioned for $27,752.50 for 73.1 hours of work related to his initial motion for attorneys' fees. After his Reply brief, Sergeant added $22,368.00, for a total of $50,120.50. Acol's only objection to the initial hours was that there were (again) too many people billing excessively. Def.'s Opp'n 40. Given the unnecessary number of attorneys involved and Sergeant's failure to exercise adequate billing judgment there was overbilling in preparing the fee petition. *See Hensley*, 461 U.S. at 437. Sergeant's two sets of attorneys only chose to reduce the hours sought in preparing the fee petition by 8.1 hours. This does not demonstrate billing judgment.

Of the initial 73.1 hours devoted to the fee petition, 45.1 hours were performed by either Carl Messineo or Mara Verheyden-Hilliard. *See* PCJF Billing Entries 96–100. For the initial petition, it was unreasonable for these two highly experienced attorneys to spend 45.1 hours on this matter. First, the drafting could have been completed by a less senior attorney. In fact, according to WLC's statements, Dennis Corkery spent 14.4 hours researching, drafting, and editing the petition. This was reasonable. Also given that multiple organizations were involved and the thoroughness of the original motion, it is reasonable that PCJF's attorneys may have spent an additional 35 hours on the petition with approximately 6 hours of assistance from a

paralegal. Therefore, I find the reasonable fees to prepare the initial fee petition total $23,002.50.

As for the Reply, it was unreasonable for Sergeant's counsel to bill 51.9 hours on a Reply brief. While I understand that Sergeant's counsel were expected to respond to Acol's memorandum, which exceeded the page limits set by this Court in its Local Rules, the amount sought for this task ($22,368.00) was excessive. Plaintiff's counsel argues that the hours expended were necessary because Plaintiff had to respond to entire categories as Defendant applied a "kitchen sink approach." Pl.'s Reply 43. Perhaps so, but all but 5 of the hours billed for preparing the Reply brief were billed by either Carl Messineo or Mara Verheyden-Hilliard at the highest rate allowed by the Local Rules. When taking the *Johnson* factors into account, especially counsel's experience and the relative degree of difficulty of this task, I will deduct 15 hours from this portion of the billing statements.

As such, I conclude that a total of $39,100 was reasonable for preparing the fee petition.

*Remaining Billing Categories*

Acol's remaining objections are presented in broad strokes and in ways similar to his other objections. Primarily, Acol complains that too many attorneys were working too many hours on all issues and tasks. *See* Def.'s Opp'n. However, there were only a few particularized objections (e.g. travel to the CVS where the incident occurred). And many of the specific objections are unpersuasive. Therefore, I accept the billings statements as reasonable. For example, one of Defendant's specific arguments challenges the $5,510.00 in services that occurred during the fourth quarter of 2014. Def.'s Opp'n 14–15. Defendant objects because he did not receive quarterly statements relating to these amounts. *Id*. Sergeant responds that he was not required to submit these costs pursuant to the Local Rules because they preceded the filing of

the Complaint. Pl.'s Reply 12–13. I am satisfied that these fees were reasonable and no deduction is needed.[9]

But, although Acol did not identify many specific examples, he is correct that there were some repetitive billings because of the interactions between PCJF and WLC. In my independent analysis of the statements, I found a total of $1,867.50 or 8.3 hours of work that was done by Dennis Corkery that also was billed for by another senior attorney (Carl Messineo or Mara Verheyden-Hilliard). The majority of this work, 4.5 hours, was for being present at the settlement conference. WLC ADR Billing Entries, ECF No. 80-6. Pursuant to the Local Rules, counsel must explain why two attorneys were needed at the conference. Having failed to do so, I will strike these hours from the fee award. *Jeffry Butler v. DIRECTSAT USA, LLC*, No. DKC-10-2747, 2016 WL 1077158, *4 (D. Md. Mar. 18, 2016). The remaining hours that appear to be duplicative—and therefore will be deducted—are interoffice meetings Corkery held with PCJF's attorneys and should only have been billed by one attorney.

Based on the lodestar hourly fees, when factoring in my reductions, Sergeant is left with a total monetary award of $225,373.95

*Success based on Claims*

The second step in awarding attorneys' fees is to subtract hours spent in the litigation of unsuccessful claims when compared to successful ones. However, it can be difficult to do this when all claims involve a "common core of facts [as] much of counsel's time will be devoted generally to the litigation as a whole" *Randolph v. Powercomm Constr., Inc.*, No. 16-2370,

---

[9] Defendant also argues that the number of hours in the quarterly statements do not reflect what is recorded in the fee petition, specifically that Sergeant's counsel billed for approximately 168 hours that were not recorded in the quarterly statements. *See* Def.'s Opp'n 15–16. I find this unpersuasive and therefore no reduction is required because Sergeant still demonstrated that he sought fewer hours in the fee petition than reflected in the quarterly statements, and the amount that he did request was reasonable. *See id.*

2017 WL 5032476, at *2 (4th Cir. Oct. 31, 2017) (citing *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998)). Even though litigation may include a common core of facts, if time barred claims or Plaintiffs are dismissed, it may warrant a reduction in fees. *See Randolph*, 2017 WL 5032476, at *2.

In this litigation, Sergeant initially brought nine claims against two individual Defendants, one Defendant acting in his official capacity, and two institutional Defendants. Compl. His Amended Complaint asserted eleven counts. Of these, four counts were dismissed at the motion to dismiss stage ("State Law Claims") and three counts were voluntarily dismissed by Sergeant (Voluntarily Dismissed Claims"). *See* Order, ECF No. 16; Pl.'s Opp'n to Mot. to Dismiss, ECF No. 14. I will discuss each in turn.

Although the sufficiency of the State Law Claims was disputed, I ultimately dismissed them for failure to comply with the LGTCA's notice requirements. Primarily, I found that Sergeant had not complied with the notice requirement—that he file within 180 days of the incident—or shown good cause for not having done so. Because the State Law Claims were dismissed, I must consider whether his fee request should be reduced. The State Law Claims were direct parallels to Sergeant's § 1983 claims for unreasonable search and seizure and for retaliation for protected speech. I find that the dismissed State Law Claims share a "common core of facts" with the Federal claims that were not dismissed. *See Brodziak v. Runyon*, 145 F.3d 194, 197. Therefore, I will not reduce the fees requested based on the dismissal of the State Law Claims.

Defendants also moved to dismiss Sergeant's claims against the Police Department (and its chief) and the City of Laurel. Defs.' Mot., ECF No. 12. In his response to the motion, Sergeant voluntarily dismissed these counts "in order to efficiently move his claims forward."

Pl.'s Opp'n to Mot. to Dismiss 4.  These three claims would have involved significant discovery into whether the dismissed Defendants inadequately trained police officers, including Acol.  But because these claims were dismissed voluntarily and before discovery commenced, I do not find that a reduction is necessary since, at the time of their dismissal, they were mere allegations that Acol's actions were attributable to his employer.  Further, the evidence necessary to demonstrate liability of the Police Department, its chief, and the City of Laurel would have included facts relevant to the § 1983 claims, and therefore no reduction in fees is required as a result of the Voluntarily Dismissed Claims.

<em>Overall Success</em>

The third step in awarding reasonable attorneys' fees is to "award some percentage of the remaining amount, depending on the degree of success enjoyed by the Plaintiff." *Randolph*, 2017 WL 5032476, at *2 (citing McAfee v. Boczar, 738 F.34 81, 88 (4th Cir. 2013)).  The Fourth Circuit has stated that "'[w]hen considering the extent of the relief obtained, we must compare the amount of damages sought to the amount awarded.'  If a § 1983 plaintiff achieves only part of the success []he sought, the lodestar amount may be excessive." *McAfee v. Boczar*, 738 F.3d 81, 92–93 (4th Cir. 2013) (citing *Mercer v. Duke Univ.,* 401 F.3d 199, 204 (4th Cir.2005); *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).  Here, Sergeant settled for $125,001.  Ordinarily, I would compare the settlement to the amount itemized in his Rule 26(a)(1)(A)(iii) disclosure of damages, however, Sergeant failed to state a monetary amount as required by my Order, ECF No. 19.  *See* Disclosure of Damages and Relief Sought, ECF No. 24.  Therefore, I am left with comparing the settlement he accepted to his initial settlement demand of $1,900,000, Initial Demand, ECF No. 75-13, which correlates to Sergeant having received approximately 6.5 percent of the relief he sought.  This comparison

could lead to a finding that Sergeant's recovery was "purely technical" and therefore a substantial reduction in his attorneys' fees would be merited. *Cf. Almendarez v. J.T.T. Enters. Corp.*, No. JKS-06-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (reducing six-figure lodestar by twenty-five percent where damages totaling $2,300 to three plaintiffs were "purely technical"); *see also Farrar v. Hobby*, 506 U.S. 103 (1992) (where plaintiff sought $17 million and received only one dollar nominal damages, circuit court appropriately reversed six-figure fee award and held no fee was appropriate). Additionally, a reduction in hours is warranted when Plaintiffs' fee request is particularly large or seeks payment for an unusually high number of hours. *Cf. Jadari v. Shiba Invs., Inc.*, Nos. 06-5012-RHB, 06-5019-RHB, 06-5020-RHB, 06-5037-RHB, 06-5050-RHB, 2008 WL 5100812 (D.S.D. Dec. 3, 2008) (reducing a fee request of over $500,000 and finding the 3,400 hours billed to be unreasonable). But because an opening settlement demand is, by its very nature, an initial position, not a final demand, I do not conclude that, taken alone, the disparity between his demand and the amount he ultimately accepted warrants a reduction.

That said, I do find that some further reduction is required based on an alternative comparison of degree of success. Sergeant was successful on approximately 36 percent of the counts originally alleged. Although, I do not think it proper to simply reduce the fee award because a party is not successful on all of his claims, the fact that the *majority* of his claims were dismissed in tandem with considerations of the amount he ultimately accepted warrants some deduction. *See Randolph v. Powercomm Const., Inc.*, 2017 WL 5032476, at *2–3. But that does not warrant reducing his attorneys' fees based on a percentage of his successful claims as compared with the total number of claims he originally sought, or as a percentage of the

settlement he ultimately accepted. *See Jeffry Butler*, 2016 WL 1077158, *6 ("Fee awards should be adequate to attract competent counsel, but should not produce a windfall to attorneys.").

Although it may have been inefficient in some ways, both of the organizations that represented Sergeant agreed to do so on a pro bono basis, with no certainty that any fee would ever be recovered. Without lawyers willing to take civil rights cases on a pro bono basis, cases such as this one, where there were serious constitutional violations alleged (and confirmed by discovery) would not be brought when the plaintiff does not have the resources to hire counsel. The undesirability of the case is one of the factors recognized by *Johnson*. Although Sergeant only received $125,001.00, it is not to say that counsel working on his case were not justified in spending a substantial amount of time working on the case in order to win him his settlement. Civil rights cases are challenging to bring, and frequently meet with vigorous opposition, as in this case. Plaintiff's counsel must have the skill and fortitude to meet the certainty of a motion to dismiss, contentious discovery disputes, and Defendants who, as in this case, publicly denied that any violation of rights ever occurred (disingenuously, as it turns out, since discovery revealed that they knew of the violation based on their own preliminary investigation).

Counsel for civil rights plaintiffs also must reckon with the very real possibility that the damage caps imposed by the LGTCA—in this case a cap of "$400,000 per an individual claim, and $800,000 per total claims that arise from the same occurrence," Md. Code Ann., Cts. & Jud. Proc. § 5-303(a)(1)—mean that any final verdict in excess of the damages cap will be worthless to the plaintiff because the municipality will not pay it, and the individual defendant likely is judgment proof. For this reason, prudence may require accepting a settlement that may fall far below what a jury, outraged by egregious conduct like that occurring in this case, likely would award because a verdict exceeding the statutory caps will essentially be only symbolic.

Experience handling civil rights cases suggests that counsel must be prepared to fight hard (and expend considerable time doing so) but settle for a realistic amount given statutory damages caps. When courts evaluate how much of a reduction is needed to align the recovery received with the hourly fees requested, they must not wield too sharp a pencil when modifying the fee award, lest they discourage the type of lawyers needed for these cases from taking them— marathoners, not sprinters. Moreover, applying the twelve *Johnson* factors in hindsight, as courts must do, can create a false sense of objective accuracy in an inherently subjective undertaking. It is easy to second guess the decisions of plaintiff's counsel as they drafted their pleadings and engaged in discovery with knowledge, acquired *ex post*, of what that discovery revealed, and the settlement amount the plaintiff accepted. Further, when the defendants challenge a fee petition with a few specific examples and an abundance of dismissive generalizations, there is a risk that the court too, will cut too much as it adjusts the hours in each billing category based on its assessment of "reasonableness."

Having already undertaken this pruning exercise with respect to each of the challenges raised by the defendants, I am cautious about making one final adjustment for degree of overall success, particularly by resorting to artificial metrics such as percentage of successful claims, or ratio of settlement accepted compared to the amount that was demanded.

The essence of Sergeant's claims, however denominated in the pleadings, was that he was subject to an unconstitutional, humiliating, public search of his genitals without legal justification. The discovery he obtained, with some effort, established the essential accuracy of his claims, and he wisely accepted an offer of judgment that had to account for litigation risks, absence of significant economic damages, and the omnipresent reality of damage caps. On these

facts, to significantly reduce the attorneys' fees by some additional percentage based upon the unavoidably subjective concept of "overall success" can be problematic.

In the interest of justice and to avoid disincentivizing other attorneys from taking cases akin to Sergeant's case, I will not reduce the attorneys' fees to be equivalent to either the 6.5 percent settlement rate or the 36 percent claim success rate. Instead, I believe a ten percent further reduction is warranted. *See Jeffry Butler*, 2016 WL 1077158, *6 (reducing the fee award by one-third because Plaintiff had limited success but Defendant "tenaciously litigated" the case). This recognizes that the already adjusted lodestar amount is somewhat excessive given the overall success Sergeant achieved, while still permitting reasonable attorneys' fees on a matter that required significant effort by his counsel. I therefore award Sergeant attorneys' fees in the amount of $202,836.56 or 90 percent of the lodestar amount.

*Litigation Costs*

Sergeant also seeks $1,723.41 in litigation expense, excluding those submitted as part of his bill of costs. Pl.'s Reply 39–40. Specifically, Sergeant seeks copying expenses in the amount of $1,264.45, telephone and fax expenses in the amount of $11.06, postage and delivery in the amount of $41.80, scanning documents for Defendant in the amount of $195.00, processing fees for deposition transcripts in the amount of $145.00, and local travel in the amount of $75.10. *See* Pl.'s Mot. 23–26; Pl.'s Reply 39–40. Defendant objects to many of these charges because it is unclear how each was calculated or each is part of "normal overhead." Def.'s Opp'n 42.

The costs generally appear to be reasonable. Although some of the costs may be "normal overhead," our Local Rules permit the awarding of such costs for "reasonable out-of pocket expenses (including long-distance telephone calls, express and overnight delivery services,

computerized online research, and faxes)." Loc. R. App'x B ¶ 4. Therefore, I will award the full amount of costs in the sum of $1,723.41.

## Conclusion

For the aforementioned reasons, Plaintiffs Fees Motion will be GRANTED AS MODIFIED, and Plaintiff will be awarded $202,836.56 in attorneys' fees and $1,723.41 in costs.

A separate order shall issue.

Dated: <u>January 3, 2018</u>      _____/S/_____
                 Paul W. Grimm
                 United States District Judge

jml